**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SUBHKARMAN SINGH,

Petitioner,

v.

WARDEN OF THE ADELANTO ICE PROCESSING CENTER, ET AL.,

Respondents.

Case No. 2:26-cv-08468-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION**

**I.**

**INTRODUCTION**

On July 31, 2026, Petitioner Subhkarman Singh (A# 246-612-926) ("Petitioner"), an immigration detainee represented by counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. (Dkt. 1 at 1-2.) On August 7, 2026, Respondents Warden of the Adelanto ICE Processing Center, Acting Field Office Director, Los Angeles Office Immigration and Customs Enforcement ("ICE"), Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche,

Attorney General of the United States (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 8.) On September 24, 2026, Petitioner filed a Reply in Support of the Petition (the "Reply"). (Dkt. 10.) The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. (Dkts. 2, 7.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to either provide a prompt bond hearing or release Petitioner.**

## II.
## FACTUAL BACKGROUND

The following facts are taken from the Petition, which is verified by counsel and supported by numerous exhibits. (Dkt. 1 at 14.) Petitioner is a citizen of India. Id. at 4.) He is a practicing Sikh and asylum-seeker who fled India and entered the United States without inspection on February 16, 2023. (Id.) Thereafter on February 17, 2023, DHS issued a Notice to Appear and placed Petitioner in removal proceedings under Immigration and Nationality Act ("INA") Section 240 (8 U.S.C. § 1229a). (Id.) Petitioner was released from DHS' custody thereafter. (Id.)

Petitioner continued to comply with all requirements of DHS. (Id.) Petitioner's application for asylum and other relief was denied on May 6, 2026. (Id.) However, even before the Immigration Judge's decision was final, Respondents detained Petitioner on May 27, 2026. (Id. at 4-5.) Petitioner filed an appeal of the denial of his asylum application with the Board of Immigration Appeals ("BIA"), which is currently pending. (Id. at 5.)

Petitioner has no criminal history. (Id.) In May of 2026, DHS abruptly took Petitioner into custody and transferred him to the Adelanto ICE Processing Center, where he remains today. (Id.)

Respondents do not dispute the foregoing facts, but provide additional facts supported by exhibits. (Dkt. 8 at 2.) Respondents note that Petitioner was enrolled in the Alternatives to Detention ("ATD") program on February 25, 2026. (Dkt. 8-1 at 2-

5.) Petitioner was ordered removed to India on May 6, 2026. (Dkt. 8-2 at 2-5.) Petitioner filed an appeal to the BIA on May 20, 2026. (Dkt. 8-3 at 2.) Based on Petitioner's Form I-213, Petitioner arrived at the ICE Los Angeles Field Office for a scheduled check-in on May 27, 2026. (Dkt. 8-4 at 3-4.) During security screening, Paragan Security and the Federal Protective Services ("FPS" identified metal objects in Petitioner's bag via x-ray. (Id. at 4.) Upon inspection, Paragon Security and FPS discovered 10 rounds of 9mm ammunition. (Id.) FPS determined this constituted a violation of 6 C.F.R. § 139.75, which prohibits any person on federal property from knowingly carrying or possessing a firearm or other dangerous weapon, as defined by 18 U.S.C. § 921. (Id.) Petitioner was instructed by Paragon Security and FPS to discard the ammunition before re-entering the building. (Id.)

Paragon Security and FPS reported the incident to Enforcement and Removal ("ERO") Los Angeles and provided photographic evidence of the ammunition. (Id.) ERO officers interviewed Petitioner, who stated that the 9mm ammunition did not belong to him and that he was unaware of its origin. (Id.) When asked where he discarded the ammunition, Petitioner responded that he placed it in a trash bin outside the Federal Building. (Id.) ERO Los Angeles subsequently arrested Petitioner without incident and processed him for custody redetermination. (Id.)

Petitioner acknowledges the facts set forth in the Form I-213, but contends that "the bag belonged to a friend with whom Petitioner lived, and the ammunition was inside it without Petitioner's knowledge or consent." (Dkt 10 at 2.) Petitioner states that his contemporaneous disclaimer of ownership reflected in the Form I-213 is consistent with the facts he has now confirmed, that "the bag and its contents were his roommate's, and the ammunition was there without his knowledge." (Id. at 6.)

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's sole claim for relief (Count One) is that his detention without a

bond hearing violates his due process rights. (Dkt. 1 at 8-12.) Petitioner seeks immediate release from custody under appropriate conditions of supervision, or alternatively, a prompt constitutionally-adequate bond hearing. (Id. at 12-13.)

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a

constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As set forth above, it is undisputed that Petitioner's conditions of release were revoked because he arrived at the ICE Los Angeles Field Office for a scheduled check-in on May 27, 2026 carrying a bag that contained 10 rounds of 9mm ammunition. (Dkt. 8-4 at 3-4.) Petitioner acknowledges these facts, but contends that "the bag belonged to a friend with whom Petitioner lived, and the ammunition was inside it without Petitioner's knowledge or consent." (Dkt 10 at 2.) However, even accepting Petitioner's disclaimer of knowledge or consent, the undisputed facts constitute sufficient changed circumstances for immigration authorities to revoke Petitioner's conditions of release. Indeed, 8 U.S.C. § 1226(b) authorizes the Attorney General to revoke bond or parole authorized for immigrants like Petitioner who are released under Section 1226(a). The Ninth Circuit has recognized that DHS's discretion to revoke bond or parole under Section 1226(b) is constrained "absent changed circumstances" such as "reinvolvement with the criminal justice system." Panosyan v. Mayorkas, 854 F. App'x 787, 787 (9th Cir. 2021) (internal quotation marks omitted) (citing Matter of Sugay, 17 I. & N. Dec. 637, 640 (BIA 1981)).

Here, the fact that Petitioner entered a federal building with 10 rounds of 9mm ammunition constituted a potential violation of 6 C.F.R. § 139.75, which prohibits any person on federal property from knowingly carrying or possessing a firearm or other dangerous weapon, as defined by 18 U.S.C. § 921. (Dkt. 8-4 at 4.) The Court understands that Petitioner disputes the knowledge element of this offense and he will have the opportunity to present evidence and make this argument at a future bond hearing, but the Court declines to order immediate release because Respondents at least had a factual basis to support their conclusion for changed circumstances sufficient to support revocation of Petitioner's conditions of release under 8 U.S.C. § 1226(b).

Accordingly, the Court turns to Petitioner's alternative request for a bond

hearing. (Dkt. 1 at 13.) As an initial matter, Respondents concede that Petitioner is entitled to a bond hearing pursuant to Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1193 (9th Cir. 2026). (Dkt. 8 at 2.) Pursuant to Rodriguez Vazquez, it is clear that Petitioner should have been provided a bond hearing and that holding him in immigration custody without a bond hearing has violated both his statutory and due process rights. See Rodriguez Vazquez, 183 F.4th at 1193. Accordingly, the Court will order the bond hearing that both sides agree he is entitled to.

The Court now turns to the appropriate legal standard that will govern the bond hearing. To determine the appropriate legal standard, it is necessary to analyze Petitioner's liberty interest in remaining out of custody. As set forth above, it is undisputed that Petitioner was initially detained by immigration authorities upon entering the United States and then released on conditions and ultimately enrolled in the ATD program. (Dkt. 1 at 14; Dkt 8-1 at 2-5.) Thus, the Court concludes that once Petitioner was released from custody on conditions, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

When balancing the Matthews factors in light of Petitioner's liberty interest in remaining out of custody, the Court concludes that due process requires the Government to bear the burden to show by clear and convincing evidence that

Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").[1] Accordingly, the Court will direct Respondents to bear the burden of proof consistent with the foregoing standard required to satisfy due process.

## VI.
## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall either provide Petitioner Subhkarman Singh (A# 246-612-926) ("Petitioner") an individualized bond hearing before a neutral Immigration Judge within seven (7) days or release Petitioner if such hearing is not timely provided. At the bond hearing, the Government must bear the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's

[1] The risk of erroneous deprivation is high because Petitioner has not received any bond hearing and Petitioner has no criminal history. (Dkt. 1 at 5.) By contrast, the Government's interest in detaining Petitioner without a bond hearing is very low because a bond hearing is routine and can be easily provided. See Carballo, 2025 WL 2381464, at *7-8.

future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents must provide adequate notice to Petitioner and his counsel so that counsel can be present and prepared for the bond hearing. If Petitioner or his counsel would like more time to prepare before the bond hearing occurs, Respondents shall permit the extra time and may provide the bond hearing after the 7-day deadline if the delay is at the request of Petitioner or his counsel. Respondents shall file a notice of compliance no later than **three days after the bond hearing occurs**.

IT IS SO ORDERED.

DATED: September 30, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE